United States District Court
Southern District of Texas
**ENTERED**
February 11, 2025
Nathan Ochsner, Clerk

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

| | |
|---|---|
| Seandre Jones, §<br>*Plaintiff*, §<br>§<br>v. §<br>§<br>Michelle King,[1] §<br>Acting Commissioner of the §<br>Social Security Administration, §<br>*Defendant.* § | Civil Action H-23-3515 |

## MEMORANDUM AND RECOMMENDATION

Seandre Jones appeals the Social Security Administration (SSA) Commissioner's (Commissioner) final decision denying his application for Social Security benefits. ECF No. 1. Pending before the court are Plaintiff's Motion for Summary Judgment, ECF No. 13, and the Commissioner's Motion for Summary Judgment, ECF No. 15. This case has been referred to the undersigned magistrate judge pursuant to 28 U.S.C. § 636(b)(1). ECF No. 9. Having considered the motions, administrative record, and applicable law, the court recommends that the Commissioner's final decision be **AFFIRMED**.

### 1. *Procedural Posture*

Jones filed his application for disability insurance benefits (DIB) on February 24, 2021. Tr. 254. He filed his application for supplemental security income on May 17, 2021. Tr. 258. Jones alleged his disability began on September 15, 2020, due to

---

[1] Martin O'Malley was the Commissioner of the Social Security Administration when this case was filed but he no longer holds that office. Michelle King is the Acting Commissioner and is automatically substituted as a party under Federal Rule of Civil Procedure 25(d).

diabetes, heart failure, HIV, depression, anxiety, high blood pressure, and lower back pain. Tr. 255, 258. Jones was thirty-five years old on the alleged disability onset date.

The SSA denied Jones's application at the initial level on August 12, 2021, and on reconsideration on April 25, 2022. Tr. 80, 103. Administrative Law Judge (ALJ) Kelly Mathews held a hearing on January 27, 2023. Tr. 44–65. Jones and a vocational expert (VE) testified at the hearing. Tr. 45. Jones's counsel was present and examined the witnesses.

Jones's counsel explained to the ALJ that Jones was "unable to sustain any competitive employment." Tr. 47. He stated that Jones suffered from cardiomyopathy, diabetes, and HIV. Tr. 47–48. Counsel further explained that Jones suffered from problems with his ankle joint due to diabetic neuropathy, and had disc space narrowing in his spine. Tr. 48. These impairments in combination, according to Jones's counsel, precluded Jones from any work.

Jones testified about his work and medical history. Jones's past work included driving a bus and supervising the transportation of disabled people. Tr. 49. He also assisted patients at a facility for patients with brain injuries. Tr. 50. Before that, Jones worked at an oil field facility monitoring drilling operations. Tr. 51.

With respect to his medical conditions, Jones explained that he had heart problems before his disability onset date. Tr. 52. He tested positive for COVID-19 in June 2020, and thereafter admitted himself to the hospital in February 2021 because of breathing problems and pain in his chest and lower extremities. *Id.* Jones testified that his problems persisted up to the time of the hearing. He fainted just days before the hearing. Tr. 53. Jones stated that he was on multiple medications to treat his diabetes. Tr. 58. His HIV was undetectable. He was also diagnosed with

PTSD, had a hard time coping with people, and stayed to himself. Tr. 60.

Jones testified about his ability to carry on activities of daily living and his functional ability. He could only walk a block before needing rest, could not stand "that much," and would at times lie down to relax to relieve his pain. Tr. 53. Jones did not use any assistive devices to stand or walk, except to hold handrails on the stairs. Tr. 54. He testified that he had no problems sitting, but would sometimes experience lower back pain, which was being treated with a topical cream. *Id.* Jones stated that he could sit "for about an hour or so." *Id.* Jones stated that he had difficulty using his hands due to pain, numbness, and knots. Tr. 55. He would have difficulty opening a water bottle. Tr. 56. He also would have to use the restroom on a frequent basis. Tr. 55. Jones testified that his medical problems prevented him from doing any household chores other than using the microwave. Tr. 57.

The VE testified about Jones's past work. His work as a driver was a semi-skilled job performed at the medium exertion level. His road supervisor job was a skilled job performed at the light exertion level. The position of certified nursing assistant was a semi-skilled, medium exertion job. Oil pipe inspector was a skilled job performed at the light exertion level. Tr. 62.

The ALJ presented a series of hypotheticals to the VE and Jones's lawyer cross-examined the VE. The VE testified about a person of Jones's age, education, and work experience who could lift/carry 20 pounds occasionally, and 10 pounds frequently; stand/walk three hours out of an eight-hour day; understand, carry out, and remember detailed but not complex instructions; and could have occasional interaction with the public. Tr. 62. According to the VE, such a person could not perform any of Jones's past work. Such a person could, however, perform other jobs available in the national economy, such as assembler, packer, and cleaner.

Tr. 63. All those jobs are unskilled positions performed at the light exertion level.

The ALJ issued her decision on March 30, 2023, finding that Jones was not disabled from September 15, 2020, through the date of the decision. Tr. 26–37. Jones requested review of the ALJ's decision, which the Appeals Council denied on August 14, 2023. Tr. 1–4. Jones timely filed a complaint and an application to proceed in forma pauperis in federal court on September 6, 2023. *See Jones v. Social Security Administration (Appeals Counsel)*, 4:23-mc-1508, ECF No. 1 (S.D. Tex. Sept. 6, 2023).

## 2. *Legal Standards*

The Social Security Act provides disability insurance benefits to individuals with physical and mental disabilities who have contributed to the program and provides supplemental security income to individuals with physical and mental disabilities who have limited income and resources. See 42 U.S.C. §§ 423, 1382. Disability under both systems is defined as the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment . . . which has lasted or can be expected to last for a continuous period of not less than twelve months." 42 U.S.C. § 423(d)(1)(A).

The Commissioner uses a sequential, five-step approach to determine whether the claimant is disabled. *See Schofield*, 950 F.3d at 317; 20 C.F.R. § 404.1520(a)(4) (2019).[2] The claimant bears the burden of proof on the first four steps, and the Commissioner bears the burden on the fifth step. *See Keel v. Saul*, 986 F.3d 551, 555 (5th Cir. 2021). A finding that the claimant is disabled or not

---

[2] 20 C.F.R. Part 404 contains the regulations for evaluating claims for disability insurance benefits, while 20 C.F.R. Part 416 contains the regulations for evaluating claims for supplemental security income. The standards for determining whether a person is disabled are the same under both Parts. For simplicity, the court cites only the regulations in Part 404.

4

disabled at any point in the five-step review terminates the analysis. 20 C.F.R. § 404.1520(a)(4) (2019).

This court's review of the ALJ's disability determination is "highly deferential," and the court asks "only whether substantial evidence supports the decision and whether the correct legal standards were employed." *Garcia v. Berryhill*, 880 F.3d 700, 704 (5th Cir. 2018) (citations omitted). "A decision is supported by substantial evidence if 'credible evidentiary choices or medical findings support the decision.'" *Salmond v. Berryhill*, 892 F.3d 812, 817 (5th Cir. 2018) (quoting *Whitehead v. Colvin*, 820 F.3d 776, 779 (5th Cir. 2016)). "Substantial evidence is 'more than a mere scintilla but less than a preponderance.'" *Id.* (quoting *Williams v. Admin. Rev. Bd.*, 376 F.3d 471, 476 (5th Cir. 2004)). "It means—and means only—'such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'" *Biestek v. Berryhill*, 139 S. Ct. 1148, 1154 (2019) (quoting *Consol. Edison Co. of N.Y. v. N.L.R.B.*, 305 U.S. 197, 229 (1938)). The reviewing court must scrutinize the record to determine whether substantial evidence supports the ALJ's decision but may not reweigh the evidence or substitute its judgment. *See Perez v. Barnhart*, 415 F.3d 457, 461 (5th Cir. 2005).

### 3. Analysis

#### A. Step One

At step one, the ALJ must determine whether the claimant is engaged in substantial gainful activity. 20 C.F.R. § 404.1520(a)(4)(i) (2019). A person engaged in substantial gainful activity is not disabled, regardless of his medical condition, age, education, or work experience. 20 C.F.R. § 404.1520(b) (2019).

The ALJ found that Jones had not engaged in substantial gainful activity since the alleged disability onset date of September 15, 2020. Tr. 29. This finding is not in dispute.

### *B. Step Two*

At step two, the ALJ determines whether any of the claimant's impairments or any combination thereof is severe and has lasted or is expected to last a continuous period of at least twelve months. 20 C.F.R. § 404.1520(a)(4)(ii) (2019) (citing 20 C.F.R. § 404.1509). An impairment is severe if it "significantly limits [the claimant's] physical or mental ability to do basic work activities." 20 C.F.R. § 404.1520(c) (2019). "[A]n impairment is not severe 'only if it is a slight abnormality [having] such minimal effect on the individual that it would not be expected to interfere with the individual's ability to work, irrespective of age, education, or work experience.'" *Johnson v. Colvin*, 595 F. App'x 443 (5th Cir. 2015) (quoting *Stone v. Heckler*, 752 F.2d 1099 (5th Cir. 1985)). "A person who does not have a 'severe impairment' is not disabled." *Schofield*, 950 F.3d at 318 (citing 20 C.F.R. § 404.1520(c)).

The ALJ found that Jones had severe impairments of congestive heart failure (CHF), cardiomyopathy (weakening of the heart muscles), diabetes mellitus, generalized anxiety disorder, and depressive disorder. Tr. 29. Jones has not disputed this finding. The ALJ found that Jones's hypertension was not severe because it did not cause any other health problems that would preclude work. *Id.* The ALJ found Jones's high cholesterol to be non-severe for the same reason, and also because it was being controlled by medication. *Id.* Because Jones's HIV was undetectable, the ALJ found that it was not severe. Similarly, Jones's PTSD was not found to be severe because there was not sufficient medical evidence to make the diagnosis. Tr. 30 (citing Tr. 2645, which characterized PTSD as a "working diagnosis.") Jones does not specifically address any of these conditions or argue that the ALJ was incorrect. While Jones insists that he is disabled and cannot work, Jones does not point to any evidence contrary to the ALJ's findings.

6

The ALJ noted that Jones had a history of sciatica. The ALJ cited records showing that he was "ambulatory with a steady gait," upon arrival at the emergency department on February 25, 2021. Tr. 29 (citing Tr. 693). An MRI showed a disc bulge, but no significant changes in his back, including no nerve compression. *Id.* (citing Tr. 2587). Physical therapy was recommended. *Id.* (citing Tr. 702). As for Jones's chest pain, the ALJ reviewed records showing that he had no active ambulatory problems. *Id.* (citing Tr. 2088). Jones was diagnosed with multiple problems in his lower extremities. *Id.* The ALJ cited records showing that Jones reported no tingling or numbness with walking after he was treated. *Id.* (citing Tr. 2688). Ultimately, the ALJ found none of the foregoing impairments to be severe because they did not pose more than a slight abnormality or combination thereof that would have more than a minimal effect on Jones's ability to work. Tr. 30. Again, while Jones states that he is disabled and cannot work, he does not cite to any evidence demonstrating that the ALJ committed legal or factual error at Step Two. The court finds no error at Step Two.

### *C. Step Three*

At step three, the ALJ determines if any severe impairment meets or equals a listed impairment in appendix 1 (Listing). 20 C.F.R. § 404.1520(a)(4)(iii)(2019); *see also* 20 C.F.R. Part 404, Subpt. P, App'x 1 (2019). The Listing describes impairments that the SSA considers "severe enough to prevent an individual from doing any gainful activity, regardless of . . . age, education, or work experience." 20 C.F.R. § 404.1525(a) (2019). The claimant will be found disabled if all the criteria of a Listing are met or equaled. 20 C.F.R. § 404.1520(d) (2019); *Whitehead*, 820 F.3d at 780–81. The claimant has the burden of establishing that an impairment meets or equals all of the specified medical criteria of a Listing. *Whitehead*, 820 F.3d at 780–81.

The ALJ considered Listing section 4.02 (chronic heart failure), section 9.00 (endocrine disorders), and sections 12.04 and 12.06 (relating to mental disorders). The ALJ engaged in a thorough analysis of these Listing sections and found that Jones did not meet any of their criteria.

Jones does not even mention the Listings, let alone demonstrate that he meets any particular Listing section. Jones has the burden of establishing that his impairment or combination of impairments meets all the Listing section criteria. *Russo v. Saul*, 805 F. App'x 269, 273 (5th Cir. 2020) (emphasis added). "'[A]n impairment that manifests only some of those criteria, no matter how severely, does not qualify' as a disability." *Heck v. Colvin*, 674 F. App'x 411, 415 (5th Cir. 2017) (quoting *Sullivan v. Zebley*, 493 U.S. 521, 530 (1990)). Having presented no evidence or argument on this issue, Jones cannot show that the ALJ erred.

### D. Residual Functional Capacity

Before reaching the final two steps of the sequential analysis, the ALJ must assess the claimant's residual functional capacity (RFC). 20 C.F.R. § 404.1520(e) (2019) (citing 20 C.F.R. § 404.1545). The RFC is a determination of the most a claimant can do despite all physical and mental limitations. *Perez*, 415 F.3d at 462. The RFC determination is "based on all the relevant medical and other evidence in [the] case record[.]" 20 C.F.R. § 404.1520(e) (2019); *see also Perez*, 415 F.3d at 461–62 (citing 20 C.F.R. § 404.1545(a)(1)); SSR 96–8p, 1996 WL 374184, at *2–*5 (July 2, 1996). The ALJ is responsible for assessing a claimant's RFC. 20 C.F.R. § 404.1546(c) (2019); *see also Taylor v. Astrue*, 706 F.3d 600, 602–03 (5th Cir. 2018) (stating that the RFC determination is the "sole responsibility of the ALJ").

8

> The ALJ determined that Jones had the RFC to:
>
> perform light work as defined in 20 C.F.R. 404.1567(b) . . . except he can lift and or carry 20 pounds occasionally, 10 pounds frequently, and he can stand and or walk 3 hours out of an 8-hour day. He is able to understand, carry out, and remember detailed but not complex instructions and he can have occasional interaction with the public.

Tr. 32. In reaching that conclusion, the ALJ considered the hearing testimony, the medical records, the medical opinions, and the prior administrative medical findings. Tr. 32-35.

The ALJ considered Jones's testimony that his conditions deteriorated after he was infected with COVID-19, including that he had to take more rest breaks, that his arms and hands would go numb, and that he needed to lie down to deal with pain. Tr. 33. The ALJ also considered Jones's testimony that he had difficulty interacting with people and that he experienced depression and feelings of being overwhelmed. *Id.* The ALJ found that Jones's impairments could be expected to cause Jones's symptoms, but that Jones's statements about the intensity, persistence, and limiting effect of his symptoms were not consistent with the record evidence. Tr. 23.

The ALJ first considered medical records reflecting Jones's mental conditions. At a November 17, 2022 office visit, he was diagnosed with depressive disorder, but was assessed to have "alert, attentive, and clear" senses, was "able to abstract," and was "goal directed and logical." Tr. 2644. His thought and perception were "lucid," he experienced no hallucinations, his intellectual functioning was normal, his insight and judgment were "good," and he had no suicidal or homicidal ideations. *Id.* The assessment went on to say that Jones continued to have some days with breakthrough depressive symptoms and fatigue, but that he was "fairly stable." Tr. 2645. Jones was on several medications to treat

9

his symptoms. Tr. 2642. At a February 11, 2021 visit to Legacy Community Health Services, he was assessed as being "fully self-sufficient." Tr. 729. Based on these and other records, the ALJ found that Jones's depressive and anxiety disorder are treatable and controllable with medication.

The ALJ turned to records concerning Jones's physical impairments. During a November 9, 2022 office visit, Jones reported no muscle aches, no general fatigue, no weakness or numbness in his arms or legs, and no joint pain. Tr. 2656. Records of an October 11, 2022 office visit show that a physical examination was conducted, but no problems with gait, strength, or balance were noted. Tr. 2882. On the same day, his heart rhythm was normal, but he had a murmur; his lungs were clear; his "neuro motor" was "intact." Tr. 2883. His cardiomyopathy ejection fraction was at 35%, which was lower than it was several months before. Tr. 2883, 2890. His ejection fraction in December 2021 was 45-55%. That said, other records from a November 7, 2021 physical examination showed that Jones was "alert, fully oriented," had "normal attention, normal mood," and that his "cranial nerves 2-12 [were] grossly intact," and had "5/5 strength [in his] upper and lower extremities. Tr. 2902. From this the ALJ concluded that there is "no clinical evidence that proves [Jones] cannot lift and or carry 20 pounds occasionally and 10 pounds frequently and that he can [sic, not] stand and walk 3 out of 8 hours in an 8-hour workday." Tr. 34. The ALJ further stated that there was no support in the record that Jones was unable to perform all work activity. *Id.*

The ALJ turned to an analysis of the opinion evidence. Dr. Cynthis Lindardos, M.D., performed a record review and determined that Jones could lift and carry 20 pounds occasionally, and 10 pounds frequently, and that he could stand and/or walk 3 out of 8 hours in a workday with normal breaks, and sit six out of

eight hours in a workday. Tr. 76. The ALJ found this opinion to be persuasive and consistent with the medical evidence. The ALJ noted that Dr. Kim Rowlands found a similar RFC on reconsideration. Tr. 34. As for his mental RFC, the ALJ explained that Drs. Sylvia Chen, Ph.D., and Mark Spade, Ph.D. found, based on their review of the records, that Jones had no mental limitations. Tr. 34. The ALJ disagreed and concluded that Jones had some limitations in his ability to concentrate, persist, and maintain pace. *Id.*

The ALJ also considered a very brief letter from Vandana Shrikanth, M.D., that said Jones's symptoms "may" limit his ability to work. Tr. 2588. The ALJ found that opinion to be "not overly persuasive," because it was not written in "medically certain terms." Tr. 35. Moreover, the ALJ noted that the symptoms described in the letter had been accounted for in the RFC. *Id.* The ALJ also considered a consultative examination performed by Amin Karim on July 28, 2021. Tr. 995–1003. The report of the examination showed that Jones had an abnormal heart rhythm, but normal breathing, and full strength in his upper extremities. Tr. 998. Jones did show some limitations in range of motion in his lower extremities. *Id.* At the same time, Jones had normal muscle tone and muscle power and strength in both his upper and lower extremities. Tr. 999. The report stated that Jones can "do work activities such as sit, stand, move about, lift, carry, handle objects, finger, feel, hear and speak." *Id.* The ALJ found the report to be "slightly persuasive," and concluded that the report shows that Jones has some work related limitations but is not precluded from performing all work. Tr. 35.

Jones does not cite or discuss any of the medical evidence. He does not explain how the ALJ's RFC analysis is flawed, and presents no evidence, other than his own word, that he is more limited than the ALJ found. In his Reply, ECF No. 16, Jones takes

11

issue with the ALJ's consideration of records from 2021 and 2022 and argues that consideration should be given to his current physical and mental condition. However, the ALJ cannot have considered information that came to light after the period under consideration, which is from September 15, 2020, to March 30, 2023. Moreover, there is no error in considering medical records from the period under review. The records the ALJ cited in support of his RFC finding support the ALJ's conclusions. The ALJ followed the proper legal rules, and his RFC determination is supported by substantial evidence.

### E. Step Four

At step four, the ALJ determines whether the claimant can perform jobs he previously worked by comparing the RFC determination with the demands of the claimant's past relevant work. 20 C.F.R. § 404.1520(f) (2019); *see also Perez*, 415 F.3d at 462. If the claimant can perform his past work, he is not disabled. 20 C.F.R. § 404.1520(f) (2019). If the claimant cannot perform his past work, the ALJ proceeds to step five. *See* 20 C.F.R. § 404.1520(g)(1) (2019).

The ALJ determined Jones could not perform his past relevant work. Tr. 35-36. This finding is not in dispute and the court does not find any fault in it.

### F. Step Five

At step five, the ALJ determines whether the claimant can perform any other work by considering the claimant's RFC and other factors, including age, education, and past work experience. *Schofield*, 950 F.3d at 318 (quoting 20 C.F.R. § 404.1520(a)(4)(v)). If the claimant can perform other work available in the national economy, the claimant is not disabled. *Schofield*, 950 F.3d at 318 (citing 20 C.F.R. § 404.1520(g)).

At the hearing, the ALJ asked the VE whether a person with Jones's same age, education, and work experience as well as the

limitations[3] that were incorporated into the ultimate RFC determination could perform other work available in the national economy. Tr. 62. The VE testified that Jones could work as an assembler, a packer, and a cleaner. Tr. 63. The ALJ thus concluded that Jones was not disabled. Tr. 29.

Because the VE's testimony was based on the ALJ's hypothetical question that incorporated all the limitations reasonably recognized by the ALJ, and Jones's attorney had the opportunity to cross examine the VE, the VE's testimony is substantial evidence supporting the ALJ's step-five determination. *See Masterson v. Barnhart*, 309 F.3d 267, 276–74 (5th Cir. 2002) (holding that the ALJ properly relied on the VE's testimony because the ALJ "scrupulously incorporated" all the limitations "supported by the evidence and recognized by the ALJ" and gave an opportunity for cross examination). Accordingly, the ALJ's findings at step five are supported by substantial evidence.

Jones argues that his age, education, and work experience should not be accounted for in determining whether he can perform other work in the national economy. ECF No. 13 at 1. However, the law requires the ALJ to consider those factors, so there is no error. *See* 20 C.F.R. § 404.1520(a)(4)(v).

### 4. Conclusion

The ALJ's decision denying Social Security benefits is consistent with the law and supported by substantial evidence. There is no genuine issue of material fact, and summary judgment is appropriate. Fed. R. Civ. P. 56(a), (c). Accordingly, the court recommends that Jones's Motion for Summary Judgment be

---

[3] The court notes that the ALJ did not explicitly state in the hypothetical that the person would be limited to "light" work. However, all the jobs that the VE specified are jobs performed at the light exertion level. Tr. 63. Thus, explicit inclusion of "light" in the hypothetical would not have changed the answer.

**DENIED**; that the Commissioner's Motion for Summary Judgment be **GRANTED**; and that the Commissioner's final decision be **AFFIRMED**.

The parties have fourteen days from service of this Memorandum and Recommendation to file written objections. 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 72. Failure to timely file objections will preclude appellate review of factual findings or legal conclusions, except for plain error. *See Thomas v. Arn*, 474 U.S. 140, 147–49 (1985); *Rodriguez v. Bowen*, 857 F.2d 275, 276–77 (5th Cir. 1988).

Signed at Houston, Texas on February 10, 2025.

_____
Peter Bray
United States Magistrate Judge